# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br><br>v.<br><br>LOUIS A. MANNA,<br><br>*Defendant*. | Crim. Action No.: 3:88-cr-00239<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Defendant Louis A. Manna's ("Defendant" or "Manna") motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 16). Defendant is a 91-year-old inmate serving an 80-year term of imprisonment for his leadership role in numerous conspiracies and organized crime. He is imprisoned at FMC Rochester (Minnesota) and has served approximately 30 years of his sentence. Manna claims that his age and health conditions constitute extraordinary and compelling reasons warranting his early release in light of the COVID-19 pandemic. Thus, he moves to modify his sentence to time served, and a period of home detention at his stepson's home in Bayonne, New Jersey. The Court heard oral argument on October 20, 2020. For the reasons that follow, Defendant's motion is denied.

I.

In 1988, Manna was charged with organizing various racketeering activities over the course of several decades. (Presentence Report ("PSR") 2). Defendant was the head of the Manna faction of the Genovese Family of La Cosa Nostra (LCN), or the Mafia. (*Id.*). He was also the consigliere – the third highest-ranking member – of the Genovese Family. (*Id.* at 2, 7).

1

One court noted that Manna "was a leader within an organization having a recognition . . . for accomplishing its goals through violence and intimidation." *Manna v. U.S. Dep't of Justice*, No. CIV. A. 93-81, 1994 WL 808070, at *6 (D.N.J. Apr. 13, 1994).

Among other things, Manna was convicted of various offenses under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961) involving violations of the Hobbs Act (extortion) and the Taft-Hartley Act (bribery). More specifically, Manna conspired to murder Irwin Schiff (who was killed at Manna's direction on August 8, 1987), Gene Gotti, and John Gotti (the leader of the Gambino Family), and Manna also financed, owned, and supervised an illegal gambling business. (*Id*. at 3, 5, 7-8, 13). *Manna v. U.S. Dep't of Justice*, 832 F. Supp. 866, 870 (D.N.J. 1993).

Manna was ultimately found guilty of seven charged offenses. (Moving Br. Ex. D, ECF No. 16-5; Opp. Br. at 2, ECF No. 19). In 1989, the Hon. Maryanne Trump Barry, U.S.D.J. sentenced Defendant to a total of 80 years of imprisonment, to be followed by a 5-year term of supervised release. (*Id.*). His anticipated release date is November 7, 2054. (Moving Br. 5, ECF No. 16-1). Defendant has been incarcerated for more than 30 years. (Moving Br. at 6).

In November 2019, the warden, acting on the recommendation of the medical department, determined that Manna was eligible for early release under the First Step Act and presented a low risk of recidivism. (Moving Br. Ex. B, ECF No. 16-3). In April 2020, the warden issued a memo stating that Manna was "approved for pursuit of an early release" and, in a May 2020 memo, recommended a sentence reduction to the Bureau of Prison's (BOP) General Counsel "due to his advanced age and medical condition." Specifically, the warden referenced Manna's "primary diagnosis of aortic valve stenosis and multiple medical issues," which could be addressed at Bayonne Medical Center if Manna were released to live with his stepson.

However, upon review of the warden's recommendation, the BOP General Counsel ultimately denied Defendant's compassionate release request in September 2020. (Moving Br. Ex. C, ECF No. 16-4). In a written statement, the BOP General Counsel explained that Manna's "medical conditions are considered chronic but stable." (*Id.*). It found that Manna is "generally independent" with his daily activities, "independently mobile" with the use of a cane, and receives assistance when necessary, such as when "using the computer and managing his medication." (*Id.*). Further, Defendant did not meet the criteria for a reduction in sentence under BOP Program Statement 5050.50 3(b) or 4(b) because he "is not confined to a bed or chair for more than 50 percent of his waking hours" and "has not yet served 50 percent of his term of imprisonment." (*Id.*).[1]

In light of the denial, Manna moved this Court for compassionate release under the First Step Act in September 2020. He argued that his advanced age and myriad health conditions place him "within the group of individuals who are at high risk of losing the battle to COVID-19 if contracted." (Moving Br. at 2-3).

First, Defendant argues that he qualifies for a sentence reduction under BOP Program Statement 5050.50 4(a)[2] and 4(b).[3] (*Id.* at 20-26). Second, he asserts that he is "debilitated" and "cannot perform his day to day hygiene tasks" due to his age and poor health. (*Id.* at 5-7).

---

[1] *See Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* ("Program Statement 5050.50"), Fed. Bureau of Prisons (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[2] Section 4(a) applies to inmates who were "sentenced for an offense that occurred on or after November 1, 1987 (e.g., "new law"), who are age 70 years or older and have served 30 years or more of their term of imprisonment."

[3] Section 4(b) requires that an inmate is at least age 65, has served at least 50 percent of his/her sentence, suffers from chronic or serious medical conditions related to the aging process, is experiencing deteriorating mental or physical health that substantially diminishes his/her ability to function in a correctional facility, and conventional treatment promises no substantial improvement to the mental or physical condition.

3

Among other health conditions, he lists his foot drop; chronic skin problems, including a past MRSA infection; prostate and colon cancer, which led to colitis, an inguinal hernia, and removal of part of his colon; high blood pressure; vertigo; ulcers; and gastrointestinal and bladder problems. (*Id.* at 21-24, 27). Based on those medical issues, Defendant argues that he meets the criteria under the U.S. Sentencing Guidelines (USSG) §1B1.13, Application Note1(A), which states that extraordinary and compelling reasons for compassionate release exist if an inmate is "suffering from a serious physical or medical condition" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (*Id.* at 27). Defendant describes himself as "an aging man, who needs twenty-four-hour-seven-day-a-week [24/7] attention, for nominal everyday tasks." (*Id.*).

Third, Defendant notes that he narrowly missed being eligible for parole because the Sentencing Reform Act of 1984 (SRA) abolished parole for individuals whose offenses were committed after November 1, 1987, and he was indicted in June of 1988. (*Id.* at 12). To support that argument he points to (1) the underlying purpose of the SRA; (2) the Sentencing Guidelines' goal of promoting consistency among similarly situated defendants; and (3) Congress's intent that some cases receive individual consideration for reduction of an unusually long sentence, which "previously could have been addressed through the (now abolished) parole system." (*Id.* at 12-14).

Fourth, Manna contends that the 18 U.S.C. § 3553(a) factors do not preclude his early release. (*Id.* at 28). In support of that argument he cites his good behavior while in the custody of BOP, the time that has passed since his crimes, the number of years he has already served, and the notion that his sentence is disproportionately long compared to other similarly situated

defendants. (*Id.* at 28-29). Also, he asserts that he "poses essentially no threat whatsoever to the community" given his age and health conditions. (*Id.* at 31).

Finally, Defendant believes BOP has violated his Eighth Amendment rights by its indifference to his medical needs. (*Id.* at 29-30). According to Dr. McGee, Defendant's medical consultant,[4] BOP has denied him necessary medical treatment. (*Id.* at 30).

Overall, Defendant argues that he presents "extraordinary and compelling reasons" for a sentence reduction based on his age and health conditions, COVID-19, and the fact that he narrowly missed being eligible for parole due to the change in law. (*Id.* at 19-20). He believes that the warden, not the General Counsel, is in the best position to determine his eligibility for compassionate release and asks this Court to confirm the warden's initial findings. (*Id.* at 17).

In response, the United States concedes that Defendant has exhausted his administrative remedies but argues that he does not present "extraordinary and compelling reasons" for early release and that the § 3553(a) factors weigh against the requested relief. (Opp. Br. 2).

First, the United States contends that Program Statement 5050.50 does not provide an inmate with an avenue of relief before this Court and, even if it did, Defendant would not meet the eligibility criteria therein. (*Id.* at 12-16). It believes the General Counsel properly engaged in a "holistic inquiry" of the various relevant factors and did not err in concluding that Defendant's sentence should not be reduced. (*Id.* at 16).

Second, it asserts that Defendant's circumstances are not "extraordinary and compelling" under the criteria set forth in Application Notes 1(A)-(D) to USSG § 1B1.13. (*Id.* at 17). It acknowledges that he is receiving treatment for at least one serious health condition, but claims that his "medical records are inconclusive as to whether his medical conditions substantially

---

[4] Manna has never moved to have the Court consider Dr. McGee as an expert witness. *See* F.R.E. 702.

5

diminish his ability to provide self-care within the environment of FMC Rochester and as to whether he is experiencing a serious deterioration in his physical or mental health because of the aging process." (*Id.* at 19-20). For example, the General Counsel's statement notes that a treating physician (Dr. Nassaralla) rated Defendant "a 5 out of 6" in his ability to independently conduct his daily activities, except he needs assistance in managing his medications, maneuvering into the shower, and maintaining a clean living space. (*Id.* at 20-21). The government also notes that many of Defendant's most severe health conditions were treated in the past and/or are currently under control. (*Id.* at 21-24). For instance, Manna argued he was suffering from cancer and MRSA, but the cancer was treated back in the nineties, and he has not had MRSA since 2013. Moreover, in September 2020, Manna endured some hypertension issues and the physician recommended an increased dose of a medicine to manage his blood pressure. Manna refused. Further, BOP medical staff constantly check Manna for COVID-19 symptoms as a means to detect the illness as soon as possible. (Opp. Br. at 22-23).

Third, the United States asserts that even if Defendant's circumstances were "extraordinary and compelling," the § 3553(a) factors counsel against granting a sentence reduction here. (*Id.* at 12, 24). It contends that there could be a "residual threat" to public safety resulting from Defendant's leadership role within LCN and his participation in numerous conspiracies to commit murder.[5] (*Id.* at 25). Further, it believes that releasing Defendant early "would frustrate the manifest intent of Congress in passing the RICO laws to impose such severe punishments." (*Id.* at 27). Finally, it argues that this Court does not have jurisdiction over Defendant's Eighth Amendment claim. (*Id.* at 13, 28).

---

[5] There is no expert or specially trained individual such as an FBI agent to make a finding as to the residual threat argument.

In his reply brief, Defendant emphasizes the severity of his medical conditions as "extraordinary and compelling reasons" for compassionate release and asserts that the government has not proffered any evidence to refute Dr. McGee's testimony. (Reply Br. 1-3, ECF No. 20). Dr. McGee claims that at FMC Rochester Manna "is attended to by medical personal [sic] every (2) two hours, which is clearly an indication of [his] poor medical health." (*Id.* at 3).

II.

A court may grant a compassionate release motion if the criteria in 18 U.S.C. § 3582(c) are satisfied. The First Step Act allows an inmate to move for compassionate release directly after he has "fully exhausted all administrative rights." Both parties agree that this step has been satisfied. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (codified at 18 U.S.C. § 3582(c)(1)(A)).

Once the exhaustion requirement has been met, the Court may reduce a sentence if the modification is justified by "extraordinary and compelling reasons" and "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). According to a Sentencing Commission policy statement, a defendant's medical condition, age, family circumstances, or "other reasons" may be grounds to find that extraordinary and compelling reasons for compassionate release exist. USSG § 1B1.13 cmt. n.1(A)-(D).

Courts have considered what "other reasons" are sufficient to warrant release under the extraordinary and compelling provision. In the context of the COVID-19 pandemic, courts have generally deferred to the CDC's list of underlying medical conditions that increase one's risk of severe illness from the virus. *See, e.g.*, *United States v. Henderson*, No. CR 15-0329 (ES), 2020

7

WL 5055081, at *4 (D.N.J. Aug. 26, 2020); *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 19, 2020).

However, even if extraordinary and compelling circumstances for compassionate release are present, a court may deny the requested relief if the 18 U.S.C. § 3553(a) factors do not weigh in favor of the defendant's release. *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020).

### III.

In order to show an extraordinary and compelling reason for modification of his sentence, Manna relies on the affidavit of Dr. John McGee, a physician who is board certified in Internal Medicine and practicing in Bayonne, New Jersey. Dr. McGee reviewed volumes of medical records provided by the BOP, and then analyzed the records to make findings about Manna's medical condition. Dr. McGee has never physically examined Manna to confirm his findings about the substance of BOP's medical records. Despite this fact, Dr. McGee's findings are similar to those of Dr. Nassaralla of the BOP. In one memorandum, Dr. Nassaralla identifies over thirty different diagnoses. However, the parties focus on a few – namely, prostate cancer, Parkinson Disease, MRSA, hypertension, aortic stenosis (mild), and dysphagia. In reviewing these conditions, it is questionable whether any constitute an extraordinary or compelling reason to warrant Manna's release. For example:

* Manna suffered colon cancer, which was successfully treated in 1995, and Manna is in remission;

* Manna contends that he is subject to recurrent bouts of MRSA sepsis, but his last treatment for MRSA was in 2013;

\*       Manna suffers from hypertension, and at times his blood pressure readings have been extremely high.  However, recently (September 15, 2020) a BOP doctor recommended an increased dosage of medicine to manage Manna's hypertension.  Manna refused the increased dosage;

\*       Manna maintains that he has developed Parkinson's Disease.  BOP records confirm bilateral hand tremor, but BOP medical staff have not diagnosed Parkinson's Disease because further investigation is necessary to confirm that diagnosis;

\*       Manna has aortic stenosis which is classified as "mild" by Dr. Nassaralla.  BOP's recommended treatment is to monitor same by performing EKGs on a regular basis;

\*       Manna complains about difficulty swallowing (dysphasia), which can cause food to become lodged in the throat, or regurgitation.  Nevertheless, BOP medical records indicate that Manna is maintaining his weight.  Dr. McGee indicates that there may be a polyploid mass obstructing the area, but BOP medical staff have declined to operate due to Manna's age.

These conditions appear to be extraordinary, but when considered against Dr. Nassaralla's description of Manna's activities of daily life (ADL), Manna is functionally able to maintain himself.  Dr. Nassaralla described Manna's ADLs as follows:

> He is able to use a phone and dial a few well-known numbers, unable to use computer to communicate with staff and family via e-mail, able to complete commissary list and manage commissary independently, able to independently plan and prepares snacks, able only to perform light daily tasks but cannot maintain acceptable level of cleanliness, able to do laundry of small items and needs help managing TRULLNCS account. His travel would be limited to taxi or automobile with assistance of another and he is not capable to manage his own medications. His instrumental activities of daily living total score is 6 out 9.

> In terms of his current functional ability based on the physical self-maintenance scale. He has care for self at toilet completely; eats without assistance; dresses and undresses self and wears uniform

9

> according to BOP policy; always neatly dressed, well-groomed, without assistance; ambulates with assistance of cane; and bathes self without assistance. His functional ability score is 5 out of 6.

Despite this rather positive statement about his ADLs, Manna has issues with pill management[6] and entering a shower.  Whether these factors move Manna's medical issues to extraordinary and compelling is questionable in light of other findings in the medical records.  As the BOP General Counsel stated, Manna suffers with medical issues that are "chronic but stable."  And, as noted above, several of Manna's most severe conditions – cancer and MRSA – were treated years ago and have not returned.  Dr. McGee asserts that Manna suffers from undiagnosed and untreated conditions, including throat cancer and Parkinson's Disease,[7] but he has never physically examined Manna.  Moreover, Dr. Nassaralla, who has physically examined Manna, concluded that he can independently conduct most of his daily activities.

Of all Manna's present health conditions, only hypertension appears on CDC's list of underlying medical conditions that *may* increase one's risk of severe illness from COVID-19; and none appear on the list of conditions that are *known* to increase that risk.  *See* CDC, *supra*.  And, Manna has unilaterally refused the recommended increased dose of medication intended to better manage his blood pressure.  *See* BOP Health Services Clinical Encounter dated September 15, 2020.

However, Manna's advanced age and his medical conditions, plus the risk of contracting COVID-19, together render his situation extraordinary and compelling – as he is 91 years of age.

---

[6]    In Manna's brief, he listed about a dozen prescriptions that he must use.

[7]    During oral argument, the government represented that the BOP intends to examine Manna with respect to his alleged undiagnosed conditions when feasible due to the coronavirus pandemic.  There was reference to one neurological examination that was inconclusive for Parkinson's Disease, and an explanation that an endoscopy for throat cancer was not performed due to risk of injury to Manna.  Therefore, the delay in testing and treatment of those conditions cannot be fairly characterized as negligence or indifference, as Manna has alleged in his Eighth Amendment claim (especially by Dr. McGee who has not physically examined Manna).

He has been described by Dr. Nassaralla as "a frail old man with multiple co-morbidities which place him at high risk for severe disease in case of exposure and development of COVID-19."

However, the Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Here, the BOP has a regular program to screen for COVID-19. Manna's medical records from 2020 show that a COVID-19 screen was regularly performed. *See* BOP Health Services Clinical Encounter dated September 15, 2020, September 11, 2020, August 27, 2020, August 14, 2020, and July 23, 2020. In addition, on September 28, 2020, Manna, like all patients at FMC Rochester were swabbed for COVID-19.[8] At FMC Rochester, there are 43 confirmed cases, which is an increase from September 1, 2020. However, screening is being regularly performed, which demonstrates that BOP has implemented a safeguard to prevent the spread of COVID-19.

Here, the § 3553 factors also weigh against modifying the sentence. The § 3553 factors direct the Court to examine the nature and circumstances of the offenses committed, as well as the nature and characteristics of the defendant. Here, both factors merge together. Manna was a leader in the Genovese family, a street boss, who accomplished LCN goals through violence and intimidation. Despite the fact that he is considered "frail" and has some medical issues, the nature of his life as a career criminal and his leadership in the Genovese family outweigh his age and medical issues.[9] As such the motion is denied.

---

[8] The results of the test were not enclosed because October 2020 records were not provided.
[9] In addition, Manna's argument that he narrowly missed being eligible for parole based on the timing of the SRA and his offenses – and that the Court should consider that among his extraordinary and compelling circumstances –

Finally, Manna asks this Court to reverse BOP's determination that he does not meet the criteria for a sentence reduction under Sections 4(a) and 4(b) of Program Statement 5050.50. However, this Court's review of a compassionate release motion is guided by the criteria set forth in 18 U.S.C. § 3582(c) and relevant guidelines and policy statements from the U.S. Sentencing Commission – not BOP program statements, which govern BOP's internal review of inmates' eligibility for a sentence reduction. As such, this Court declines to review BOP decisions made pursuant to its own program statements.

ORDER

This matter, having come before the Court on Defendant Louis A. Manna's motion for compassionate release (ECF No. 16); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

IT IS on this 4th day of December, 2020,

ORDERED that Defendant's motion for compassionate release (ECF No. 16) is denied.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

---

is not persuasive. The fact that Manna continued to commit crimes after the SRA's passage, thus disqualifying him for parole under that Act, does not weigh in his favor.