UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATE OF AMERICA, | ) | |
| | ) | Case No. 88-CR-00239 |
| LOUIS ANTHONY MANNA, | ) | |
| | ) | |
| Defendant. | ) | |

SECOND MOTION FOR REDUCTION OF SENTENCE PURSUANT TO
18 U.S.C §3582(c)(1)(A)

The defendant, LOUIS ANTHONY MANNA, by and through his attorney Jeremy M. Iandolo of J. Iandolo Law, with an office located at 7621 13th Avenue Brooklyn NY 11228, hereby submits a second request for an order to reduce his sentence to time served based on extraordinary and compelling circumstances pursuant to 18 U.S.C. §3582(c)(1)(A). The Third Circuit has held this Court is not bound by U.S.S.G. 1B 1.13 and is free to decide the motion on its merits. *United States v. Andrews*, 2021 U.S. App. LEXIS 26089 (3d Cir. Aug. 30, 2021).

### INTRODUCTION

The defendant seeks mercy from this Court. Defendant is 91 years old and has been in the federal prison system for over three decades.

A similarly situated defendant from the Western District of Missouri was shown mercy and given a second chance. *United States v. Cox*, No. 89CR 196 (W.D. Mo. 2021) (ECF 122). Cox was a career offender who was alleged to have been the boss of the Black Mafia and participated in 17 homicides in the Kansas City area *("How Did Eddie Cox, A White Man, Become A Top Leader In The Kansas City's Black Mafia")* Kansas City Star, June 2, 2021. Cox was shown mercy by the court, and his time was reduced to time served.

## ADMINISTRATIVE REMEDIES

The defendant has exhausted all administrative remedies. In August 2021, the defendant sent a second RIS request to the Warden at the Federal Medical Center in Rochester, Minnesota. On September 14, 2021, the Warden at the Federal Medical Center denied defendant's request. *See* **Exhibit 1.**

## JURISDICTION

The Court may reduce a sentence to time served pursuant to 18 U.S.C. §3582(c)(1)(A) by applying the application of 18 U.S.C. 3553(a). The relevant factors are found in §3553(a) and they are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed to reflect the seriousness of the offense"; (3) "the kinds of sentences available'" (4) "the kinds of sentences available and sentencing range established for" the offense at the time of sentencing; (5) "any pertinent policy statement" in effect at the time of the defendant's sentencing; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." *Id.* 3553(a)(1)-(7).

Nine United States Circuit Courts of Appeals have held that, absent updated guidance from the Sentencing Commission ("*U.S.S.G.*"), the First Step Act ("FSA"), allows a district court to consider any extraordinary and compelling reason to reduce a sentence pursuant to 18 U.S.C. §3582(c)(1)(A). *United States v. Brooker,* 976 F.3d 228, 235 (2d Cir. 2020); *United States v. Andrews,* 2021 U.S. App. LEXIS 26089 (3d Cir. 2021); *United States v. McCoy,* 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Shkambi,* 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Ellis,* 984 F.3d 516, 519-20 (6th Cir. 2021); United States v. Gunn, 980 F.3d 1178, 1180-81 (7th Cir. 2020); *United States v. Aruda,* 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McGee,* 992 F.3d 1035, 1050 (10th Cir. 2021); United States

v. Long, 997 F.3d 342, 355 (D.C. Cir. 2021). One circuit court disagrees, *United States v. Bryant*, 996 F.3d 1243, 1247-48 (11th Cir. 2021).

Federal criminal sentencing is inherently retrospective. But many of the goals of sentencing—rehabilitation, just punishment, deterrence - implicate prospective concerns. Compassionate release gives a court the opportunity to take a second look at sentences to account for unusual and changed circumstances. The Sentencing Commission has noted, '[t]he court is in a unique position to determine whether the circumstances warrant a reduction." U.S.S.G. § 1B 1.13 & comment. (nn.1, 4); U.S.S.G. § Amend. 799 (Nov. 1, 2016). The Court considered the nature and circumstances of defendant's criminal acts when he was sentenced, as well as his role in the offense, criminal history, and other related facts. See 18 U.S.C. § 3553; Federal Sentencing Guidelines Manual (2021). The Court relied on guidance reflecting society's then current understanding of criminal culpability and punishment at the time of sentencing. But what the Court could not confidently measure at the time of defendant's sentencing is his capacity for change. *See* Shon Hopwood, *Second Looks and Second Chances*, 41 Cardozo L. Rev. 83, 85 (2019). (Professor Hopwood himself is a convicted bank robber, and he served a lengthy prison sentence. Hopwood later graduated from law school, clerked for the D.C. Circuit, and became a member of the Georgetown Law Center faculty as well as a member of the Bar of the Supreme Court).

Individuals who commit serious crimes are not beyond rehabilitation. The availability of a second chance through compassionate release can incentivize individuals serving seemingly hopeless sentences to rehabilitate themselves in ways they might otherwise never have attempted. *See id.* at 97.

As Congress legislates to account for changed views on punishment, many individuals are left serving federal sentences far longer than society deems necessary for the same conduct today.

### FIRST MOTION

The defendant's first motion for reduction of sentence was denied by the Court on December 4, 2020. In November 2019, the Warden at the Federal Medical Center in Rochester, Minnesota, acting on the recommendation of the medical staff determined that the defendant was eligible for early release under

the FSA and he presented a low risk of recidivism. (Exhibit 2 and 3) However, the Bureau of Prisons, General Counsel denied the request in September 2020.

## SECOND MOTION

The defendant has exhausted all administrative remedies. Exhibit 1. This Court has jurisdiction to consider a second motion to reduce sentence pursuant 3582(c)(1)(A). *United States v. Jackson*, 2021 U.S. Dist. LEXIS 96110 (N.D. Ohio May 20, 2021); *Owen v. United States*, 2020 U.S. Dist. LEXIS 237901 (E.D. Va. 2020).

## PROCEDURAL HISTORY

The defendant was charged in 1988 with various offenses under the Racketeer Influenced and Corrupt Organization Act ("RICO") pursuant to 18 U.S.C. 1961, which involving violations of the Hobbs Act (extortion) and the Taft-Hartley Act (bribery). The defendant was convicted, and sentenced to a term of 80 years imprisonment, and was ordered to serve five years supervised release.

## VULNERABILITY TO COVID-19

The defendant has very serious medical issues which makes him very vulnerable to COVID-19. With the new strains of the virus in the United States which is spreading very rapidly, there is a real possibility that the defendant will be subjected to one of the new strains, and if so, it would be a death sentence in light of his age (91) and his present medical condition. Many individuals who have been vaccinated and had the virus are now contracting one of the new strains of the virus (publichealth.jhu.edu/2021/ new-data-on-covid-19-transmission-by-vaccinated-individuals). Only 54% of all Federal Bureau of Prisons employees have been vaccinated, although vaccination has been offered to every employee. BOP staff members transmit the virus into the Medical Center as inmates have no outside contacts other than BOP staff. As of September 17, 2021, the BOP had 131, 126 federal inmates in BOP managed institutions and 14,550 in community-based facilities. The BOP staff compliment is approximately 36,000. There are 651 federal inmates and 574 BOP staff members who have confirmed positive test results for COVID-19 nationwide. Currently, 42,876 inmates and 7,456 staff have recovered. There have been 255 federal inmate deaths and 6 BOP staff member deaths attributed to the COVID-19

disease. www.bop.gov.coronvarius (last visited Sept. 18, 2021). Courts have recognized the "various shortcoming of the BOP COVID-19 Action Plan. *United States v. Gorai*, 2020 U.S. Dist. LEXIS 72893 (D. Nev. 2020). Inmates are being released on their vulnerability to COVID-19. *United States v. Stephenson*, 2002 U.S. Dist. LEXIS 89591 (S.D. Iowa 2020); *United States v. White*, 2020 U.S. Dist. LEXIS 103974 (S.D. W.Va. 2020).

## EXTRAORDINARY CIRCUMSTANCES

The defendant is 91 years old and has spent over three decades in federal prison. During defendant's incarceration, he has demonstrated his commitment to change through rehabilitative programming. The defendant's medical issues are very serious and life threatening due to his age and the various stages of his ailments. (**Exhibit – 4** – Summary of Manna's Medical Condition as of September 2020) (**Exhibit 5** Medical History September 2020-Present).

Section 3582(c) "provides a path for defendants in "extraordinary and compelling circumstances' to be released from prison early." *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (quoting 18 U.S.C. §3582(c)(1)(A)). "Congress provided no statutory definition of 'extraordinary and compelling reasons.'" *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). Instead, Congress tasked the Sentencing Commission with promulgating general policy statements regarding the sentencing modification provision in section 3582(c)(1)(A)," including "what should be considered extraordinary and compelling reasons for sentence reduction . . . ."28 U.S.C. §994(t).

The Sentencing Commission issued a policy statement regarding "Reduction in Term of - Imprisonment Under 18 U.S.C. §3582(c)(1)(A) at U.S.S.G. 1B 1.13. However, this policy statement pre-dated the FSA, and the Ninth Circuit held it is not an "applicable policy statement[]" under Section 3582. *Aruda,* 993 F.3d at 802; see 18 U.S.C. § 3582(c)(1)(A)(i). In so doing, the Ninth Circuit cited approvingly to the Fourth Circuit's decision stating that in the absence of an applicable policy statement, "district courts are 'empowered . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2000) (*quoting United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alterations and emphasis in original).

Our criminal justice system evolves in response to changes in how we, as a society, perceive criminal acts and the appropriate penalties for them. Like the system, the individual penalized can evolve and mature. The importance of giving those individuals meaningful second chances cannot be overlooked. When ruling on a compassionate release motion, "the court must consider every prisoner individually and should be cautious about making blanket pronouncements." *United States v. Terry*, 2021 U.S. Dist. LEXIS 175946, at *19 (E.D. Tex. Sept. 15, 2021) (*quoting* United States v.*Chavez*, 2020 WL 4500633, at *3 (N.D. Tex. Aug, 5, 2020); *United States v. Delgado*, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020) (same); *see United States v. Ashley*, 2020 WL 7771215, at *4 (S.D. Ala. Dec. 30, 2020) (holding that, in considering a motion for compassionate release, the court must take an "individualized and particularized review" of the defendant's characteristics (*citing* United States v. *Tobias*, 2020 WL 4673414, at *5 (D.D.C. Aug. 12, 2020); United States v. Brown, 2020 WL 4346911, at *3 (D.D.C. July 20, 2020); *United States v. Joaseus*, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020))).

## 18 U.S.C. 3553 FACTORS

### 1. 3553(a)(1) — The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

However, for the record, the defendant will never commit any illicit act. Being in prison for the past 32 years, the defendant clearly understands the consequences of misbehavior.

Evidence of postconviction rehabilitation may plainly be relevant to "the history and characteristics of the defendant." *Pepper v. United States,* 562 U.S. 476, 491 (2011) (citing 18 U.S.C. S 3553(a)(1)). Several courts have considered a defendant's rehabilitation in granting compassionate release motions. *United States v. Brown,* 2020 WL 2091802, at *7 (S.D. Iowa Apr.29, 2020); *United States v. Decator*, 452 F. Supp. 3d 320 (D. Md. 2020); *United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. 2020); *United States v.Perez*, 2020 WL 1180719, at *7 (D. Kan. Mar. 11, 2020) (finding that inmates rehabilitation favored compassionate release where inmate "availed himself to various educational programs". Until today, the defendant has participated in every program which his health permits.

2.          **3553(a)(2)(A) — Just Punishment**

Section 3553(a)(2) considered whether a given sentence complies with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S.Ct. 1170, 1175 (2017). While defendant's underlying offenses are undeniably serious, the defendant has already served over 32 years in prison which has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses and the need for general or specific deterrence and is a period of time that promotes respect for the law and provides just punishment for his offenses. *United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Calf. 2020); *Redd*, 2020 WL 1248493, at *8.

The defendant would refer the Court back to the Cox case. Cox served 32 years in prison before the court showed mercy and released him pursuant to 18 U.S.C. §3582(c)(1)(A). Cox was the boss of the Black Mafia and participated in 17 homicides. *United States v. Cox*, 89-CR-00196 (W.D. Mo. 1989).

3.          **3553(a)(2)(B) Deterrence**

The United States Department of Justice ("DOJ") published a paper entitled "Five Things About Deterrence," 42 Crim. & Just. 199, 201 (2013),*United States v. Browning,* 2021 U.S. Dist. LEXIS 38058 (E.D. Mich. 2021). In the paper, the DOJ explains that, in terms of both specific and general deterrence, there is overwhelming evidence in the scientific literature that the certainties of being caught is a vastly more powerful deterrent than the [severity of the] punishment. *Id.* at 12.

4.          **3553(a)(2)(C) — Protecting the Public**

The defendant poses no danger whatsoever to the public, as he knows the consequences of any type of misbehavior, and he would never put himself or the public in jeopardy. The defendant is 91 years old and in very poor health, and his movements will be limited if the Court shows mercy and releases him pursuant to 18 U.S.C. S 3582(c)(1)(A)(i). The defendant's time of this earth is very limited.

## DANGER TO SOCIETY

Considering defendant's age along with his efforts toward rehabilitation, as well as his good conduct while in prison, he is unlikely to ever engage in further criminal activity if he is released from custody. The defendant is not the same person who stood before this Court for sentencing in 1989. The defendant does not pose any type of threat to any individual or to society at large.

## RELEASE PLAN

As previously approved, the defendant will reside with his stepson in Bayonne, New Jersey. The majority of defendant's family, including his loving wife, has passed since he has been confined.

## CONCLUSION

WHEREFORE, in the interest of justice, the defendant respectfully requests that this court modify his sentence, and release defendant, pursuant to its authority under 18 U.S.C. §3582.

Respectfully submitted,

*Jeremy M. Iandolo*

Jeremy M. Iandolo, Esq.
Attorney for Defendant Louis Manna
7621 13th Avenue
Brooklyn NY 11228