## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
|  | : |  |
| UNITED STATES OF AMERICA | : | Criminal Case No. CR-88-239 (MTB) |
|  | : |  |
| v. | : | **MEMORANDUM IN SUPPORT OF** |
|  | : | **COMPASSIONATE** |
| LOUIS MANNA | : | **RELEASE/REDUCTION IN SENTENCE** |
|  | : |  |

_____

Louis Anthony Manna ("Manna"), by and through his counsel, respectfully moves pursuant to 18 USC 3582(c)(1)(A)(i) for an order reducing his sentence of imprisonment to time-served based on his age and duration of time he has been incarcerated as discussed below.

## STATUTE OF WHICH RELEIF IS SOUGHT

Defendant Manna, through his undersigned counsel, respectfully moves pursuant to 18 U.S.C. § 3582(c)(1)(A) for an order reducing his sentence to time-served or, alternatively, modifying his sentence to a term of home confinement or supervised release for a reasonable period. As detailed below, Mr. Manna's case meets the criteria for a sentence reduction:

1. **Pursuant to 18 U.S.C. § 3582(c)(1)(A)(ii):** Mr. Manna is over 70 years old and has served more than 30 calendar years of his imprisonment term.

2. **Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i):** Extraordinary and compelling reasons exist in Mr. Manna's case, including:

   o His 75-year sentence is excessive and disproportionate to his crimes of conviction.

   o He is 94 years old with rapidly declining health.

1

- o He has already served more than 34 calendar years in prison.

- o He has demonstrated extraordinary rehabilitative efforts during his incarceration.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

    In keeping with the spirit of the First Step Act ("FSA"), Mr. Manna respectfully requests that the Court grant him a reduction in sentence or compassionate release, allowing him to return home to his family for the remainder of his life.

## RELEVANT PROCEDUARAL HISTORY

    Manna was indicted and convicted after a jury trial in the United States District Court for the District of New Jersey. Found guilty of 18 USC 1962(c); 18 USC 1962(d); 18 USC 1952 b; 29 USC 186 b; 18 USC 1955 and 18 USC 1952 b and was sentenced to 75 years of imprisonment. The Court of Appeals for the Third Circuit affirmed his conviction; subsequent motions under 28 U.S.C. § 2244 for leave to file a second or successive § 2255 petition to vacate his sentence were denied; and his first motion for compassionate release/reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) was denied in July 2020.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

    The defendant has exhausted all administrative remedies. In June 2024, Manna sent a RIS request to the Warden at the Federal Medical Center in Rochester, Minnesota. On June 25, 2024, the Warden denied Manna's request (see Exhibit A). On July 1, 2024, Manna appealed this denial, arguing that it was improper because he meets both criteria under subsection (a) for New Law

elderly inmates and subsection (b ███████████████████████

████████████████████████████████

███████████████████████████, the Warden, on his own accord,

approved Manna's request for compassionate release, and it is now at the general counsel level.[1]

## Applicable Law

"A prisoner may file a motion for compassionate release with the sentencing court after [he or she] has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier." *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (quoting 18 U.S.C. Section 3582(c)(1)(A).

A prisoner's motion filed with the sentencing court pursuant to Title 18 U.S.C. Section 3582(c)(1)(A) is not an appeal or review of a BOP determination on a request for RIS motion. Rather, after the passage of the FSA, Section 3582(c)(1)(A) sentence reduction motions can be filed by a defendant and considered on a de novo basis. *United States v. Beck*, 425 F.Supp.3d 573 (M.D.N.C. 2019) ("the terms of the FSA give courts independent authority to grant motions for compassionate release and says nothing about deference to BOP, thus establishing that Congress wants courts to take a de novo look at compassionate release motions.").

To qualify for a sentence reduction, Manna must show: (1) that he has exhausted administrative remedies and (2) that his case satisfies the criteria set forth in either 18 U.S.C. Section 3582(c)(1)(A)(i) or 18 U.S.C. Section 3582(c)(1)(A)(ii).

---

[1] The previous Warden, S. Kallis, of the same facility, recommended Manna for consideration pursuant to 18 U.S.C. § 3582(c) due to his advanced age and medical condition, more than two years ago, and was denied at the general counsel level without investigation.

**Argument**

    a.  <u>**Manna is entitled to a Reduction in Sentence Pursuant to 18 U.S.C. Section 3582 (c) (1) (A) (ii)**</u>

A reduction of Manna's sentence is warranted pursuant to 18 U.S.C. Section 3582(c)(1)(A)(ii) and Section 4(a) of the Federal Bureau of Prisons ("BOP") Policy Statement ("PS") 5050.50. Specifically, both 18 U.S.C. Section 3582(c)(1)(A)(ii) and Section 4(a) of the BOP's Policy Statement provides that inmates like Manna, who have been sentenced for an offense that occurred on or after November 1, 1987 ("new law") are age 70 years or older, and have served 30 years or more of their term of imprisonment and are no longer a danger to the community, are eligible for early release.

Here, Manna's case plainly meets such criteria. The charged offense conduct is after November 1, 1987. Manna, 94 years of age, has served more than 30 years of his term of imprisonment, and as explained herein, the BOP has determined that his risk of recidivism is low and is "eligible" for the First Step Act as of November 4, 2019. *See* Exhibit B. Most importantly the Government by the own admissions confirm that Manna is not a danger to the community[2]. Accordingly, Manna satisfies the applicable criteria for early release.

    b.  <u>**There are Extraordinary and Compelling Reasons to Reduce Manna's Sentence pursuant to 18 U.S.C. Section 3582 (c) (1) (A) (i)**</u>

In addition to Mr. Manna's case satisfying the criteria set forth in 18 U.S.C. § 3582(c)(1)(A)(ii), there also exists other extraordinary and compelling reasons to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Louis Manna fits squarely into the class of individuals sought to find relief as well as the legislative intent of 18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] Most importantly the Government by the own admissions, in their prior opposition, confirmed that Manna is not a danger to the community.  *See Docket No. 19 pg. 25 ¶1*

Manna is 94 years old, has spent more than 30 years in prison[3], and, by the government's own admission, is not a danger to society (see United *States v. Pawlowski,* 967 F.3d 327, 330-31 (3d Cir. 2020), recognizing that age and health conditions are significant factors in evaluating compassionate release). If Manna is not what the statute was drafted to protect, then whom is? There have been individuals convicted of more severe crimes, who are neither as old nor as sick as Manna, and they were afforded relief pursuant to the statute. Thus, we assert that Manna is the prime candidate under this statute for release.

Manna meets the burden of extraordinary and compelling reasons to warrant a reduction. The Sentencing Commission issued a policy statement section 1B1.13(b) defining extraordinary and compelling reasons based on the incarcerated person's medical condition or age. U.S.S.G. §§ 1B1.13(b)(1), 1B1.13(b)(2). The Commission's Medical Note requires the incarcerated person show they suffer from a serious physical or medical condition, suffer from a serious functional or cognitive impairment, or are experiencing deteriorating physical or mental health because of the aging process and the argued condition substantially diminishes the incarcerated person's ability to provide self-care in the correctional facility. U.S.S.G. § 1B1.13(b)(1). The Commission's Age Note requires the incarcerated person show they are at least sixty-five years old, are experiencing a serious deterioration in physical or mental health from aging and have served at least ten years' imprisonment or at least seventy-five percent of their term of imprisonment, whichever is less. U.S.S.G. § 1B1.13(b)(2). *United States v. Martines,* No. 94-127-3, 2024 U.S. Dist. LEXIS 61013, at *16 n.115 (E.D. Pa. Apr. 3, 2024)

1. **Medical Condition**

---

[3] Manna has been incarcerated for more than 36 years.



[redacted]

- [redacted]

His age-related decline impacts his ability to care for himself and poses significant challenges in the prison environment, which is not equipped to handle geriatric care; as such in relation to these cited illnesses [redacted]

[4] Due to the volume of records, Counsel has only attached hereto medical records from the last eight months, which enumerate the diagnosis's found herein. Additional records shall be furnished upon request.



[redacted]

[redacted]

[redacted]

---

[redacted]

## 2. Manna Disproportionate Punishment and Comparative Sentences

To lead by an example in *United States v. Grecco*, 89-00250, 2022 U.S. Dist. LEXIS 209668 (D.N.J. Nov. 18, 2022), the defendant, Grecco, was initially charged in 1989 alongside co-defendants for his involvement in the Genovese Family of La Cosa Nostra under the Racketeer Influenced and Corrupt Organizations (RICO) Act. He was convicted on all counts and sentenced to 65 years in prison in 1991. Despite multiple appeals and post-conviction motions, including those under 28 U.S.C. § 2255, Grecco's attempts to overturn his conviction or reduce his sentence were unsuccessful.

Years later, Grecco filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing his advanced age, time served, serious medical conditions, and significant rehabilitation. At the time of his motion, Grecco was 78[6] years old and had served over 33 years of his sentence. He demonstrated a low risk of recidivism and had shown consistent rehabilitation, evidenced by his completion of Bureau of Prisons (BOP) programs and positive conduct without disciplinary infractions. Grecco also suffered from serious chronic medical conditions, including a stroke, chronic kidney disease, and hypertension, which significantly impaired his ability to function in a correctional facility.

The court determined that Grecco's circumstances, particularly his age, health issues, and the substantial time he had already served, satisfied the criteria for compassionate release. The court further concluded that the objectives of sentencing under 18 U.S.C. § 3553(a) had been fulfilled, justifying a reduction in his sentence. As further enumerated herein, the case of Grecco is part of a broader pattern where courts have granted sentence reductions to defendants convicted of

---

[6] Manna is 17 years older than Grecco and has medical issues substantially more debilitating.

serious offenses who have served long sentences and demonstrated rehabilitation, often with conduct more severe than Manna's alleged crimes.

A reduction of Manna's sentence is warranted due to the excessiveness of his original sentence, and the fact that he has already served a term of imprisonment that is longer than the median sentencing for a murder conviction in both state and federal court[7]. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *6-7 (D. Utah Feb. 18, 2020), affirmed in United *States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) (32-year-old defendant who served approximately ten years of a 55-year-sentence for three violations of §924(c) granted sentence reduction hearing due to overly long sentence and his young age at the time of the offenses; district court had the statutory authority to determine what constituted extraordinary and compelling reasons warranted a reduction of sentence; the district court was not bound by the Sentencing Commission's existing policy statement issued prior to enactment of the First Step Act, and a finding of extraordinary and compelling circumstances was based on an individualized consideration of all circumstances of the case); *United States v. Haynes*, 456 F.Supp.3d 496 (E.D.N.Y. 2020) (52-year-old defendant who served almost 27 years of a 46.5-year sentence for conspiracy to commit bank robbery and robbery based on "stacked" § 924(c) sentenced to time served based on the severity of the sentence*); United States v. Eric Millan*, No. 91-CR-685(LAP), 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020) (57-year old defendant serving a life sentence for being "[a]t the top of the pyramid" of heroin trafficking organization granted reduction to time served, 28 years, based on defendant's exceptional rehabilitation, length of time already served, and demonstrated remorse*); United States v. Redd*, 444 F.Supp.3d 717 (E.D.Va 2020) (64-year-

---

[7] 4 U.S. Dept. of Justice, Bureau of Justice Statistics, Time Served in State Prison, 2016 (Nov. 2018) (median time served for a murder conviction amongst all state courts is 13.4 years).

old defendant who served approximately 23 years of 50.25 years for three bank robberies and attempted bank robbery granted reduction to time served due to severity of defendant's "stacked" § 924(c) sentences); *United States v. Urkevich*, No. 8:03 Cr. 37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (defendant sentenced to 595 months who served a little more than 184 months for drug trafficking and firearm sentence granted a reduction 368 months based on original sentence's undue severity and his rehabilitation and no danger to any person or community).

Indeed, statistics compiled by the United States Sentencing Commission show that for fiscal year 2019, the average national sentence imposed for the crime of murder is 255 months (21 years, 4 months); for "Extortion/Racketeering," 32 months (2 years, 8 months); for robbery, 109 months (9 years plus 1 month); for child pornography, 103 months (8 years, 7 months); and for crimes of "treason, sabotage, espionage, evasion of military service, prohibited financial transactions and exports, providing material support to designated foreign terrorist organizations, nuclear, biological, and chemical weapons, and weapons of mass destruction," 42 months (3 years, 6 months). *United States v. Haynes, supra,* (citing Table 15 and Appendix A, p. 213, "Sentence Imposed by Type of Crime," https://www.ussc.gov/2019-AnnualReport-and-Sourcebook).

While Manna does not dispute the seriousness of his alleged offense, it is clear that his 75-year imprisonment sentence is excessive when compared to the referenced sentencing statistics. Furthermore, it is indisputable that a reduction is warranted given that Manna's sentence is significantly longer than those imposed on other individuals convicted of similar crimes. A key sentencing factor emphasized by Congress in 18 U.S.C. § 3553(a) is "the need to avoid unwarranted sentence disparities" among similarly situated defendants.

Notably, courts nationwide have utilized the First Step Act to reduce overly long sentences for defendants like Manna who originally received an excessive and disproportionate sentence in comparison to others similarly situated. See *Haynes, supra* (reducing a 46.5-year sentence based on "stacked" § 924(c) sentences to time served based on the severity of the sentence*); Redd, supra* (collecting cases regarding court's authority and reducing sentence based on severity of defendant's "stacked" § 924(c) sentences); *Maumau, supra* (reducing sentence based on severity of sentence and defendant's young age at the time of the offenses); *Urkevich, supra* (D. Neb. Nov. 14, 2019) (reducing sentence based on original sentence's undue severity).

The excessiveness of Manna original sentence, along with the fact that he has already served a term of imprisonment that is far longer than the median sentencing for a murder conviction in both federal and state court nationwide, provides the Court a very compelling reason to grant the requested relief.

**Manna's Rehabilitation**

Manna's 35-plus years of extraordinary rehabilitative efforts also counsels for a sentence reduction. For the past 35-years of his imprisonment, Manna has demonstrated extraordinary rehabilitation as proven by his many accomplishments, meritorious prison record, and the positive relationship he maintained with both his family and community.

In this regard, the pattern of Manna's good acts while imprisoned and his prolonged rehabilitative efforts "exceed[s] the bounds of what we consider [normal] rehabilitation" in this context and alone constitutes a compelling basis for a sentence reduction. *See United States v. Underwood,* No. 88-Cr-822 (SHS), 2021 U.S. Dist. LEXIS 8378 (S.D.N.Y., January 15, 2021) (finding that the defendant's good acts did "not just to better himself but also to better his community" and "it is this pattern of meaningful, positive influence on those around him that

rises above 'rehabilitation . . . alone' and comprises an extraordinary and compelling reason for early release.").

To his great credit, and notwithstanding the uniquely painful circumstances of his harsh confinement, Manna has always sought to improve himself while imprisoned to the utmost extent possible. To date, Manna has successfully and continuously sharpened his life skills via books and art. Manna has a passion for the arts, which causes him to communicate in such a way, to his family and loved ones – up until the recent years where he has lost his abilities, due to the ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. ██████████████.

Many courts have also recognized that rehabilitation in combination with the other factors can constitute extraordinary and compelling reasons to reduce a defendant's sentence. See, e.g., *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15 (S.D.N.Y. Apr. 6, 2020) (57-year-old defendant sentenced to life for drug conspiracy granted compassionate release after serving 28 years due to "extraordinary rehabilitation"); *United States v. Cantu-Rivera*, Cr. No. CR H-89-204, 2019 WL 2578272, at *2 n.2 (S.D. Tex. June 24, 2019) (69-year-old defendant sentenced to concurrent life terms due to drug conspiracy granted compassionate release after serving more than 30 years due to deterioration in health because of the aging process—arthritic condition in multiple joints, cataracts, diabetes, prostrate conditions); *United States v. Almonte*s, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *8 (D. Conn. Apr. 9, 2020) (47-year-old defendant, a career offender, sentenced to 262 months' imprisonment for drug conspiracy granted compassionate release after serving more than 15 years in prison due to factors including need for serious spinal surgery which was not life-threatening); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *3 (N.D. Ohio Oct. 17, 2019) (34-year-old defendant sentenced to

132 months for armed bank robbery, brandishing a firearm and bank robbery, granted compassionate release after 100 months due to rehabilitative efforts, failing health of his mother, and "extraordinary job opportunity").

**Section 3553(a) Sentencing Factors Favor a Sentence Reduction**

Further favoring Manna's early release is the fact that there exists a low risk of recidivism related to Manna's release and that the aims of punishment, as contemplated by the 3553(a) sentencing factors, has already be accomplished by virtue of Manna's service of 35-plus years of imprisonment.

Moreover, as stated supra, the Government, by their own admissions stated that was not a danger to the community.

### i. Low Risk of Recidivism

The risk of recidivism for an elderly and sick inmate like Manna is negligible, and all relevant studies support that Manna's release would present a positive outcome. To be sure, the BOP has already determined that Manna's risk of recidivism is low (See Exhibit B). The BOP has assessed that the risk level associated with Manna's release is "low" based upon a combination of factors, to generally include the inmate's age, offense conduct, criminal history, incident reports, and programming.

The low risk of recidivism here is further supported by case studies establishing that elderly inmates like Manna generally do not revert to criminal activity when released. According to all relevant statistics, there is an inverse correlation between Manna's age group and recidivism. It is "impossible to deny" the "positive correlation between age and recidivism." *United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005) (drug distribution sentence of 108 months—though guidelines range 168-210 months for 57-year-old defendant not considered disparate; defendant has serious medical problems and is an Army veteran; U.S.

Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (2004) ("Recidivism rates decline relatively consistently as age increases"). More particularly, it is evident that men are far less likely to be involved in criminal conduct after the age of 60. The older an offender, the more the risk of recidivism greatly declines. *See,* e.g.*,* Kim Steven Hunt and Billy Easley, II, *The Effects of Aging on Recidivism Among Federal Offender*s, at 3 (December 2017) (hereafter "*The Effects of Aging on Recidivism")* ("Older offenders were substantially less likely than younger offenders to recidivate following release . . . The pattern was consistent across age groupings, and recidivism measured by re-arrest, reconviction, and reincarceration declined as age increased"). In this regard, case studies have conclusively shown that older offenders are at lower risk for reoffending. Id. (finding that 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release); Kim Steven Hunt and Robert Dumville, *Recidivism Among Federal Offenders*: *A Comprehensive Overview,* at 23 (2016) (hereafter "Comprehensive Overview"). According to the U.S. Sentencing Commission, "[o]ffenders sentenced when younger than twenty-one had a 71.1 percent rearrest rate, compared to 14.0 percent of offenders who are sentenced after age sixty." *Id*. Furthermore, offenders like Manna who would be over sixty years old at the time of release, had the lowest recidivism rate, 16.0 percent. *Id*. In fact, even inmates incarcerated for violent offenses are nevertheless unlikely to reoffend once they are elderly:

> [W]hen considering dangerous, violent, and predatory inmates, one does not usually envision an elderly man hobbling down a prison corridor with a cane or walker. However,...some of the most dangerous and persistent criminals who were sentenced to life in prison without parole 30 years ago are now old, debilitated, frail, chronically ill, depressed, and no longer considered a threat

to society or the institution.

Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 Am. J. of Pub. Health 523, 526 (2013) (emphasis added).

Notably, research has not demonstrated that a lengthier sentence will necessarily reduce recidivism. "Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed. . . [A]mong all offenders sentenced to one year or more of imprisonment, there was no clear association between the length of sentence and the rearrest rate," I*d*., at 3 (emphasis added). *See also Comprehensive Overview* at page 22 ("Offenders with shorter lengths of imprisonment generally had lower recidivism rates.... Conversely, the highest recidivism rates are generally found among offenders with longer sentences"); see also Hopwood, Shon R*., Improving Federal Sentencing* (March 15, 2018), University of Missouri-Kansas City Law Review, Vol. 87, No. 79, at 90-91, 2018 ("There is also reason to believe that long prison sentences cannot be justified on the basis of specific deterrence. [T]he U.S. Sentencing Commission released a study explaining that those released early under the Fair Sentencing Act had the same recidivism rate as those who did not receive a reduction, meaning longer sentences did not necessary provide specific deterrence.").

Finally, as evidenced by the many commendations of prison officials and others, the risk of recidivism is further mitigated by Manna's extraordinary rehabilitation and his strong family ties and continued community support. C.f*., Loyd v. United States*, No. 15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (defendant sentenced to 120 month mandatory minimum for drugs granted compassionate release after serving three years; in addition to medical conditions of severe obesity, hypertension, immunocompromised from hip injections; the movant's fatherhood to four children persuaded the court to grant the defendant's motion for compassionate release as his parenthood would reduce the likelihood he would regress into criminal behavior);

*United States v. White*, No. 13-20653-01, 2020 WL 2557077, at *2 (E.D. Mich. May 20, 2020)
(defendant sentenced to 120 months for felon in possession of a firearm and possessing cocaine
base with intent to distribute granted compassionate release after serving 80% of sentence due to
obesity and hypertension; Court noted defendant's assertion that his "numerous family members"
would help him to continue his rehabilitation outside of prison.)

To this end, Manna's family is ready for his return home, and they are all committed to
ensuring that it is a successful transition. In a letter, ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ (Exhibit D – Nardone Letter).
Phyllis Castle, Manna's daughter, writes in support of his release, emphasizing that even after 36
years of incarceration, Manna has remained a steadfast supporter of his family, always putting
them first. She notes that he has consistently maintained a positive and hopeful outlook. Manna's
grand-daughter and great-granddaughter also express their support for Manna's compassionate
release, acknowledging that while contact has become less frequent due to his age and declining
health, their love for him remains strong. They hope to see him before he passes and wish for him
to return home to be with his family. (Exhibit D – Letters).

Accordingly, there is good reason to believe that Manna's release into the community will
be a positive one.

**3553(a) Sentencing Factors**

Manna's long imprisonment has already proven to accomplish the true purpose of
sentencing, taking an account of "the nature and circumstances of the offense and the history and

characteristics of the defendant," as well as the need for the sentence to facilitate retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a).

To be sure, Manna's service of more than 36-years of imprisonment is a significant punishment by any measure. Indeed, it is hard to imagine that such punishment is not sufficient but not greater than necessary to achieve the aims of punishment in this case, especially considering that the length of Manna's imprisonment has already far exceeded the median sentence for other defendant's convicted of graver offenses.  Moreover, Manna's most serious crimes would have been punishable under the "old law," which would have allowed for the possibility of parole. However, a gambling charge, which fell under both the new and old laws, subjected him to the current situation and instant request pursuant to 3582.

To lead by example, in *United States v. Grecco*, 89-00250, 2022 U.S. Dist. LEXIS 209668, at *1 (D.N.J. Nov. 18, 2022) *Grecc*o, like Manna was, charged in 1989 along with co-defendants for involvement in an alleged criminal enterprise under the RICO Act, was convicted on all counts and sentenced to 65 years in prison in 1991. His subsequent appeals and post-conviction motions, including those under 28 U.S.C. § 2255 and other legal avenues, were denied. Grecco filed a motion for compassionate release, asserting that he meets the criteria under 18 U.S.C. § 3582(c)(1)(A) due to his age, time served, medical conditions, and rehabilitation. There, Greco was 78 years old, has served over 33 years of his sentence, demonstrated low recidivism risk and has shown rehabilitation through completion of BOP programs and positive conduct. He too suffered from serious chronic medical conditions (e.g., stroke, chronic kidney disease, hypertension) that substantially diminish his ability to function in a correctional facility and are unlikely to improve with conventional treatment.

In Grecco the court found that the defendant's circumstances, including his age, medical conditions, and extensive time served, meet the criteria for compassionate release. Additionally,

the goals of sentencing under 18 U.S.C. § 3553(a) have been met, warranting a reduction in his sentence.

Notably, the decisions in *Swint, Rodriguez, Tidwell, Rios, Cruz, Perez, Hunter Fisher, and Grecco* are a small sample of many cases in which the courts granted reductions to defendants convicted of very serious offenses but who have served long terms of imprisonment and demonstrated rehabilitation (with no disciplinary charges in prison). In most of such cases, the defendants' role and offense conduct were greater than Manna'a role and offense conduct (which was committed almost four decades ago).

In *United States v. Rodriguez*, 492 F.Supp.3d 306 (S.D.N.Y. 2020), the Court granted a reduced sentence (from life without the possibility of parole to 30 years) to a 54-year-old defendant convicted of substantive and conspiratorial counts of racketeering, substantive and conspiratorial counts of drug trafficking (defendant ran a racketeering enterprise focused on the distribution of cocaine and heroin in the Bronx and elsewhere), and the brutal torture and murder of a confidential informant. In spite of the terrible crime (an accomplice to the torture and murder of a government informant to protect his criminal organization), the court found that defendant had demonstrated extraordinary rehabilitation, had risk factors for serious illness from COVID-19 (obesity and Type II diabetes), and had suffered the particularly harsh prison conditions that have attended prison life in the wake of COVID-19.

In *United States v. Tidwell*, 476 F.Supp.3d 66 (E.D. Pa. 2020), the Court also reduced a life sentence for the 62-year-old terminally ill defendant who had served only 25 years of a life sentence for orchestrating multiple murders and leading a violent drug organization (a continuing criminal enterprise; "CCE"), based on defendant's illnesses which include metastatic (stage IV) prostate cancer, hepatitis C, and hypertension.

18

Again, Manna's case for release of a terminally ill 94-year-old male, who has served 35-years of imprisonment for conspiracy and gambling is far more compelling and deserving than found in *Tidwell,* especially considering that *Tidwell* personally led an organization and ordered the murders of multiple rivals. Nevertheless, as was materially dispositive in *Tidwell'*s successful request for a reduction, the length of imprisonment here, coupled with the Manna's rehabilitative efforts, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Like Mr. Tidwell (only 62 years old), Manna (94) made the very best of his 36 years in prison and rehabilitated himself, even though he knew that he could not humanly survive the original sentence that was imposed. As stated supra, and demonstrated by data, as individuals age, the likelihood of recidivism declines. Thus, Manna a 94-year-old male, one who has outlived his life expectancy, is unlike Tidwell.

In *United States v. Rios*, No. 3:94-cr-112 (JBA), 2020 U.S. Dist. LEXIS 230074, 2020 WL 7246440 (D.Conn. Dec. 8, 2020), the 50-year old defendant, a member of the Latin Kings gang convicted of RICO and VICAR and sentenced to life, was granted compassionate release after serving 26 years due to obesity and hypertension. This in spite of the defendant having committed crimes that included the cold-blooded murder of one Sidney Diaz.

In *United States v. Cruz*, No. 3:94-CR-112 (JCH), 2021 WL 1326851, 2021 U.S. Dist. LEXIS 68857 (D. Conn. Apr. 9, 2021), the 45-year-old Latin Kings defendant serving life without the possibility of parole for RICO, RICO conspiracy, 3 VICAR counts (including a double murder) and conspiracy to commit a drug offense, was granted compassionate release after 31 years because of "his age at the time of his crimes, the length of his sentence, his extraordinary rehabilitation, the COVID-19 pandemic, and his family circumstances constitute extraordinary and compelling reasons to reduce his sentence under the statute."

In *United States v. Perez*, No. 3:02cr7 (JBA), 2021 WL 837425, 2021 U.S. Dist. LEXIS 41040 (D. Conn. Mar. 4, 2021), defendant sentenced to life (without parole) plus five years for murder, murder-for-hire and other offenses, was granted compassionate release after 23 years due to his medical conditions (obesity, hypertension, sleep apnea, and arthritis). Perez has been released despite being convicted of procuring a murder (paying $6,000 to have Theodore Casiano killed, shot 14 times in broad daylight) to protect his drug distribution operation (a death penalty-eligible offense).

In *United States v. Hunter,* Crim. No. 11-039(PLF), 2020 WL 5748115, at *3-4 (D.D.C. Sep. 25, 2020), the 63-year-old defendant sentenced to 180 months for convictions of Robbery, Firearm Possession, and Attempted Armored Car Robbery While Armed was granted compassionate release after serving approximately 73% of his sentence due to his medical condition including cervical spine myelopathy, peripheral neuropathy, herniated discs, detached retinas, cataracts, Type 2 diabetes, Stage 2 hypertension, and Hepatitis C. The Court also cited defendant's "correctional treatment, and community engagement" notwithstanding his "serious and disturbing" prior criminal history including second-degree murder, armed robbery, setting fire to his then-girlfriend's home with her and a minor child inside, and a prison disciplinary record "including violent altercations with other prisoners."

In *United States v. Fisher*, 493 F.Supp.3d 231 (S.D.N.Y. 2020), the 73-year-old defendant serving life without parole after having been convicted of being a drug kingpin was granted compassionate release after serving 38 years due to his rehabilitative efforts while incarcerated. Significantly, the defendant was convicted of being a leader of the "Council," a group of seven individuals who ran an extensive narcotics enterprise that operated in New York City from 1972 to 1983. *Id.* at 233. The large conspiracy included at least "four murders that Fisher was said to have personally committed." *Id.* at 236.

The Court's words in Fisher are particularly relevant:

> Together Fisher's considerable and sustained efforts to rehabilitate himself bespeak a change man. *See Pepper v. United States*, 562 U.S. 476, 491, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) ("Evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.") These considerations tip this factor in favor of Fisher.

<p style="text-align:center">* * *</p>

> Fisher's age and time removed from criminal activity, along with his clean disciplinary record, lessen the need for further specific deterrence or to "protect the public from further crimes of the defendant.. . *Fisher*'s age makes the risk of recidivism extremely remote." 493 F.Supp.3d at 238.

Similarly, Manna's "age and time removed from criminal activity, along with is clean disciplinary record, less the need for further specific deterrence or to 'protect the public.'"

In *United States v. Nate Swint*, Crim. No. 94-276, 2021 WL 1210111 (E.D.Pa., March 31, 2021), the 70-year-old defendant Swint, serving two mandatory life sentences for drug trafficking, was granted compassionate release and a time-served sentence of twenty-seven years. It is respectfully submitted that Manna is even more deserving of compassionate release as he is 24 years older than Mr. Swint has served about eight more years and has a lesser sentence (80 years versus two mandatory life sentences). Mr. Swint has been released.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, exceptions exist under the First Step Act (FSA), 18 U.S.C. § 3582(c)(1)(A)(i), which permits courts to grant compassionate release if "extraordinary and compelling reasons" warrant it. The statute allows for sentence reduction upon motion by the Director of the Bureau of Prisons or by the defendant after exhausting administrative remedies.

The defendant bears the burden of proving procedural prerequisites and the existence of compelling reasons for compassionate release. Courts must also consider the sentencing factors under 18 U.S.C. § 3553(a) and ensure the reduction is consistent with Sentencing Commission policy statements.

Today, Manna is truly a changed person after serving more than 36-plus years of imprisonment. As was afforded to many other similarly situated defendants nationwide, Manna also deserves a second chance at this time. Indeed, he has demonstrated an exceptional transformation in the last four decades: maintaining a perfect disciplinary record while being housed in a high security penitentiary, completing numerous programs, and maintaining healthy relationships with his family despite the fact that he was sentenced to such a lengthy sentence.

### Release Plan

If this Honorable Court finds that Mr. Manna meets the criteria set forth in 18 U.S.C. § 3582, Mr. Manna's son and daughter-in-law have the means and availability to properly care for him. Upon release, ████████████████████████████████████████ ████████████████████████████, which the United States Probation Office has already deemed suitable. If necessary, Mr. Manna's family is prepared to provide any additional care, including but not limited to hiring aides, nurses, and physical therapists, as well as addressing all of his medical needs.

Mr. Manna is a 94-year-old man who has been incarcerated for the past 36 years and suffers from, inter alia, ████████████████████████████ Therefore, we respectfully ask that this Court grant Mr. Manna's release, as he meets all the criteria set forth in 18 U.S.C. § 3582, allowing him to reunite with his family for his remaining days.

### CONCLUSION

For all the foregoing reasons, Manna respectfully requests that his motion for reduction in sentence be granted. His sentence should be modified to time served or, in the alternative, time served with either home confinement or supervised release or both for a reasonable period thereafter.

Respectfully submitted,

**_s/ Jeremy M. Iandolo_**
Jeremy M. Iandolo
J. Iandolo Law, P.C.
8212 3rd Avenue
Brooklyn NY 11209
T: (718)305.1702
F: (718)395.1732
E: jiandolo@jiandololaw.com
*Attorney for Defendant Louis Manna*

Dated: August 26, 2024